**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 10 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PAULA DIANE WILBURN and
VIRGINIA PEARL SHROYER,

      Plaintiffs - Appellants,

v.

MID-SOUTH HEALTH
DEVELOPMENT, INC., a Texas
corporation, doing business as
Heartland Plaza,

      Defendant - Appellee.

No. 02-5040

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 00-CV-468-K (E))**

---

Bill V. Wilkinson of the Wilkinson Law Firm, Tulsa, Oklahoma, for Plaintiffs-Appellants.

Terry J. Garrett (Kelly J. Walker with him on the briefs), Garrett & Walker, LLP, Norman, Oklahoma, for Defendant-Appellee.

---

Before **SEYMOUR, EBEL,** and **BRISCOE**, Circuit Judges.

---

**EBEL**, Circuit Judge.

      Plaintiffs-Appellants Paula Diane Wilburn and Virginia Pearl Shroyer ask

us to find that Oklahoma public policy prohibited their termination from their at-

will employment and to reverse the district court's grant of summary judgment in favor of Defendant-Appellee Mid-South Health Development, Inc. Because Plaintiffs have failed to identify any Oklahoma state law—constitutional, statutory, regulatory, or decisional—which articulates a public policy sufficiently strong to prevent their termination, we AFFIRM the judgment of the district court.

## I.  BACKGROUND

Wilburn and Shroyer ("Plaintiffs") were terminated from their respective positions as certified medication aide and cook at Heartland Plaza, a residential care facility operated by Defendant. Plaintiffs suspected another employee of stealing and using drugs from the facility's medication room. They decided to report this other employee based on their observations that she had falsified the medication room log records to conceal her theft of patient medication. But, instead of following the chain of command outlined in the employee handbook, which would have required them to report this employee to her close friend, Administrator Janice Evans, Plaintiffs reported this employee to Denise Hudson, a medication consultant at the facility. Janice Evans fired Plaintiffs for, inter alia, "not following the proper chain of command in raising an issue about another employee."

Plaintiffs brought actions against Defendant for wrongful discharge in violation of Oklahoma public policy. Defendant first filed a motion for summary judgment with respect to Plaintiff Wilburn. The district court granted the motion, finding that Oklahoma had no public policy that protected internal whistleblowing. Defendant then filed a motion for summary judgment with respect to Plaintiff Shroyer. During the briefing on the motion for summary judgment against Shroyer, the Oklahoma Supreme Court issued <u>Barker v. State Insurance Fund</u>, 40 P.3d 463 (Okla. 2001), an opinion that substantially undermined the district court's reasoning in its first order by holding that both internal and external whistleblowers may be protected from termination by Oklahoma public policy. <u>Id.</u> at 468.[1] Upon Wilburn's motion to reconsider, the district court decided to permit supplemental briefing on <u>Barker</u> and to hear the second motion for summary judgment with respect to both Plaintiffs in light of that case. (App. at 256.)

In its second order, the district court again granted Defendant's motion for summary judgment. Despite its recognition that under <u>Barker</u>, internal

---

[1]In reaching its initial conclusion that Oklahoma state law does not protect internal whistleblowers, the district court had relied heavily on our case, <u>Richmond v. ONEOK, Inc.</u>, 120 F.3d 205, 210 (10th Cir. 1997). We note that certain language in that case pertaining to the inapplicability of a <u>Burk</u> claim to an internal whistleblowing situation has been disapproved by the Oklahoma Supreme Court in <u>Barker</u>.

whistleblowers <u>may</u> be protected from termination, the district court held that Plaintiffs had not proven that there was a sufficiently strong Oklahoma public policy preventing their termination and that Plaintiffs had failed adequately to substantiate their belief that the accused employee was actually stealing or taking drugs.  The district court also found that this case was controlled by existing Oklahoma Supreme Court precedent and did not need to be certified.

On appeal, Plaintiffs contend that Oklahoma does have a strong public policy preventing their termination; however, they have failed coherently to articulate what that policy is or upon what law it is based.  Thus, we exercise jurisdiction over this diversity action pursuant to 28 U.S.C. § 1291 and AFFIRM the district court's grant of summary judgment.  Because we find this case can be resolved without the assistance of the Oklahoma Supreme Court, we decline to certify a question to that court.

II.     DISCUSSION

We review motions for summary judgment de novo, applying the same standard as the district court.  <u>Richmond</u>, 120 F.3d at 208.  Summary judgment is appropriate if there is no genuine issue of material fact and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The only question at issue in this appeal is whether the state of Oklahoma has a public policy that would bar

the termination of Plaintiffs' at-will employment. The determination of a public policy exception is a question of law for the court to decide. Pearson v. Hope Lumber & Supply Co., 820 P.2d 443, 444 (Okla. 1991). Thus, we review this issue de novo. Quigley v. Rosenthal, 327 F.3d 1044, 1057 (10th Cir. 2003) (reviewing de novo a question of state law decided on summary judgment).

In Burk v. K-Mart Corp., 770 P.2d 24, 28 (Okla. 1989), the Oklahoma Supreme Court recognized a cause of action for wrongful discharge in violation of public policy, creating an exception to its general rule of at-will employment.[2] The court noted, however, that this public policy exception "must be tightly circumscribed" and is available only "where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy." Id. at 29. The clear and compelling public policy on which the plaintiff relies must be articulated by state constitutional, statutory, regulatory or decisional law. Id.; Gilmore v. Enogex, Inc., 878 P.2d 360, 364 n.19 (Okla. 1994).[3]

---

[2]This cause of action is now referred to as a "Burk tort."

[3]Although many cases state that the policy must be articulated in "constitutional, statutory, or decisional law," others indicate that regulatory law is acceptable as well. Gilmore, 878 P.2d at 364 n.19 ("When attempting to find and articulate a clear mandate of public policy, we look to the letter or purpose of a constitutional, statutory or regulatory provision.") (emphasis added); Burk, 770 P.2d at 29 ("'[C]ourts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory or regulatory provision or

(continued...)

The Oklahoma Supreme Court has identified five kinds of public policy exceptions to the general rule of at-will employment: (1) refusal to participate in an illegal activity; (2) performance of an important public obligation; (3) exercise of a legal right or interest by the employee; (4) exposure of some wrongdoing by the employer; and (5) performance of an act that public policy would encourage or refusal to do something that public policy would condemn, when the discharge is coupled with a showing of bad faith, malice or retaliation. Groce v. Foster, 880 P.2d 902, 904-05 (Okla. 1994).

Plaintiffs assert that their claim falls into the fifth category—they claim that they performed an act that public policy would encourage, i.e., they reported a co-worker who was stealing narcotics from the elderly residents of the facility and using them at work.[4] Thus, for claims of this type, "[t]he identified public policy 'must be truly public, rather than merely private or proprietary.'" Barker, 40 P.3d at 468 (citing Hayes, 905 P.2d at 786).

_____

[3](...continued)
scheme.'") (emphasis added) (citing Parnar v. Americana Hotels, Inc., 652 P.2d 625, 631 (Haw. 1982)).

[4]Plaintiffs also allege that their assertion of public policy may fall into the second category—performance of an important public obligation. This category is meant to cover public service, such as jury duty, not the types of actions taken by Plaintiffs in this case. See Hinson v. Cameron, 742 P.2d 549, 552-53 & n.9 (Okla. 1987).

In Barker, the Oklahoma Supreme Court specifically examined the sufficiency of a Burk tort claim in the whistleblower context. Barker, 40 P.3d at 468. The Court held that internal and external whistleblowers may state a Burk tort claim under two conditions. First, they must assert a strong public policy supporting their specific whistleblowing activity. Id. ("Oklahoma law protects both internal and external reporting of whistle-blowers who establish a sufficient public policy violation from retaliatory discharge."). Second, the employee's whistleblowing must not be based entirely on rumor. Id. at 471 ("There is no 'rumor spreader exception' to the employment-at-will doctrine.") Barker left open the question of how certain the employee must be of the information he or she is reporting, declining to decide whether a whistleblower must have "direct personal knowledge of the wrongdoing" or "only an objectively good faith belief that the reported wrongdoing has occurred." Id.

In the instant case, there is a genuine dispute of material fact regarding how certain Plaintiffs were about their co-employee's alleged drug theft and use, which we cannot resolve on summary judgment.[5] Therefore, if Plaintiffs can

---

[5]We disagree with the district court's finding that Plaintiffs did not show "any facts that offer the Court any more evidence than that [they] w[ere] tattling on someone for purported conduct about which [they] had only a supposition." We find that Plaintiffs' affidavits and deposition testimony were sufficient evidence to create a genuine issue of material fact on whether they held "objectively good faith belief[s]" that their co-employee committed the alleged

(continued...)

- 7 -

identify a sufficiently strong public policy underlying their whistleblowing activity, they can survive summary judgment. We find that they have failed to do so.

Plaintiffs argue that three different areas of Oklahoma law support their claim that Oklahoma has a strong public policy encouraging the reporting of the theft or use of drugs by employees in elderly care facilities: the Nursing Home Care Act and regulations promulgated thereunder; the Residential Care Act and regulations promulgated thereunder; and the Uniform Controlled Dangerous Substances Act. We will consider each alleged basis in turn.

## A.    Nursing Home Care Act

Plaintiffs first argue that Oklahoma's Nursing Home Care Act, Okla. Stat. Ann. tit. 63, § 1-1901 through § 1-1952, and regulations promulgated thereunder indicate that Oklahoma has a strong public policy supporting their whistleblowing. Plaintiffs refer specifically to § 1-1942, which authorizes the Oklahoma State Department of Health to promulgate rules and regulations under the Act. They also cite to one regulation promulgated under the Act, Okla.

---

[5](...continued) wrongdoing.

Admin. Code § 310:675-9-9.1 ("Resident Care Services").[6]  Plaintiffs argue that this regulation articulates a strong public policy because it "expressly provide[s] for safeguards and procedures regarding the storage, safekeeping, monitoring, dispensing, and when necessary, the destruction of patient prescription drugs, including narcotic drugs such as the ones involved here."  (Aplt. Br. at 6.)  However, because Defendant is not governed by the Nursing Home Care Act or its regulations, Plaintiffs cannot rely on these laws to support their Burk tort claim.

In Griffin v. Mullinix, 947 P.2d 177 (Okla. 1997), the Oklahoma Supreme Court held that an employee cannot articulate a public policy that would prevent his or her termination if that policy is based on laws that do not apply to the employer.  Id. at 179 (holding that employee could not state a public policy to prevent his termination based on Oklahoma's workplace safety laws when those laws did not apply to his employer).  Thus, we must determine what laws govern Defendant's facility to determine what laws we may consider in deciding whether Oklahoma has a strong public policy that would prevent Plaintiffs' termination.

_____

[6]The district court, relying on Plaintiffs' misrepresentations, mistakenly believed that this regulation was promulgated pursuant to the Residential Care Act, presumably because it is entitled "Resident Care Services."  This regulation was in fact promulgated under the Nursing Home Care Act and applies only to residents of nursing homes.  See Okla. Admin. Code, ch. 675, indicating that the authority for regulation 310:675-9-9.1 is 63 O.S. 1901 et seq., the Nursing Home Care Act.

Under Oklahoma law, the state may issue licenses for several types of elderly care facilities, including nursing homes, continuum of care or assisted living homes, and residential care facilities. Each type of facility is licensed under and governed by separate laws and regulations. Nursing homes are governed by the Nursing Home Care Act, Okla. Stat. Ann. tit. 63, § 1-1901 through § 1-1952, and the regulations in chapter 675 of the Oklahoma Administrative Code. Continuum of care or assisted living facilities are governed by the Continuum of Care and Assisted Living Act, Okla. Stat. Ann. tit. 63, § 1-890.1 through § 1-899.1, and the regulations in chapter 663 of the Oklahoma Administrative Code. Residential care facilities are governed by the Residential Care Act, Okla. Stat. Ann. tit. 63, § 1-819 through § 1-842, and the regulations in chapter 680 of the Oklahoma Administrative Code.

Plaintiffs maintain that Defendant operates a nursing home governed by the Nursing Home Care Act; Defendant claims it operates a residential care facility, governed by the Residential Care Act. We agree with the district court's finding that Defendant operates a residential care facility. Defendant's license clearly indicates that it is a residential care facility, and Plaintiffs offer no evidence to the contrary.

Because Defendant operates a residential care facility, we may consider only laws governing residential care facilities. The Nursing Home Care Act

specifically excludes residential care facilities from its coverage. Okla. Stat. Ann. § 1-1903(B). Although the Residential Care Act incorporates some provisions of the Nursing Home Care Act, id. § 1-840, Plaintiffs do not cite any of those provisions as supporting their claim of a strong Oklahoma public policy. Thus, under Griffin, the Nursing Home Care Act or regulations promulgated thereunder cannot establish a public policy sufficiently strong to prevent Plaintiffs' termination.[7]

## B. Residential Care Act

Plaintiffs next argue that the Residential Care Act, Okla. Stat. Ann. tit. 63, § 1-819 through § 1-842, and regulations promulgated thereunder articulate a strong public policy that would prevent their termination. Plaintiffs point specifically to § 1-821(A)(8), which authorizes the Oklahoma State Department of Health to

---

[7]Although they do not discuss them in their briefs, Plaintiffs also cite to Okla. Admin. Code § 310:663-19-2 and a table of federal regulations attached as an exhibit to their responses to Defendant's motions for summary judgment. (App. at 91-94.) Okla. Admin. Code § 310:663-19-2 is a regulation applicable only to Continuum of Care or Assisted Living homes. Thus, for the reasons discussed above, we cannot consider it because it does not apply to Defendant's facility. We also cannot consider the federal regulations because "Burk claims must have their basis in Oklahoma state law." Richmond, 120 F.3d at 210 (refusing to consider the federal Fair Labor Standards Act or Family and Medical Leave Act as the basis for the plaintiff's Burk tort claim) (emphasis added); McKenzie v. Renberg's, Inc., 94 F.3d 1478, 1487-88 (10th Cir. 1996).

> develop and enforce rules and regulations . . . to implement the provisions of the Residential Care Act.  Such rules and regulations shall include but not be limited to governing temperature limits, lighting, ventilation, and other physical conditions <u>which shall protect the health, safety, and welfare of the residents in the home.</u>

Okla. Stat. Ann. tit. 63, § 1-821(A)(8) (emphasis added).  Plaintiffs do not identify any specific regulation promulgated under this section to support their position.

As discussed above, we may consider the Residential Care Act and regulations promulgated thereunder because these laws apply to Defendant's facility.  However, Plaintiffs failed to mention these statutes and regulations until their brief on appeal.  By failing to assert these laws as the basis for their claim of a public policy exception before the district court and by failing to develop their argument based on these laws before this Court, we find that Plaintiffs have waived this argument.

An issue is waived if it was not raised below in the district court.  <u>Walker v. Mather</u>, 959 F.2d 894, 896 (10th Cir. 1992).  Although we may resolve an issue not raised below where "the proceedings below resulted in a record of amply sufficient detail and depth from which the determination may be made," <u>United States v. Mendez</u>, 118 F.3d 1426, 1431 n.2 (10th Cir. 1997) (quotation omitted), we will not consider a new theory "that falls under the same general category as an argument presented [before the district court] or . . . a theory that was

- 12 -

discussed in a vague and ambiguous way." <u>Bancamerica Commercial Corp. v.</u>

<u>Mosher Steel of Kansas, Inc.</u>, 100 F.3d 792, 798-99 (10th Cir. 1996).  In

reviewing a ruling on summary judgment, we will not consider evidence that was

not before the district court.  <u>John Hancock Mut. Life Ins. Co. v. Weisman</u>, 27

F.3d 500, 506 (10th Cir. 1994) (citation omitted).  We also will not consider

issues that are raised on appeal but not adequately addressed.  <u>Ambus v. Granite</u>

<u>Bd. of Educ.</u>, 975 F.2d 1555, 1558 n.1 (10th Cir. 1992).

Applying these principles, we conclude that Plaintiffs have waived an

argument premised on the Residential Care Act and its regulations.  Although

Plaintiffs mention the Residential Care Act as support for their <u>Burk</u> tort claim in

their brief on appeal, they do not specifically address a single substantive

provision of the Act or identify a single regulation promulgated under the Act to

advance their argument.  For us to conclude that these laws and regulations

established a public policy exception, we would have to understand how they

governed Defendant's employees, how their purposes were effected, and what

public health risk Plaintiffs argue was at stake.  Because none of this analysis was

presented to the district court or to this Court, it is simply impossible for us to

conclude that the Residential Care Act articulates a strong Oklahoma public

policy preventing Plaintiffs' termination.  Thus, any argument premised on the

Residential Care Act must fail.

### C. Uniform Controlled Dangerous Substances Act

Finally, Plaintiffs cite the Uniform Controlled Dangerous Substances Act, Okla. Stat. Ann. tit. 63, § 2-101 through § 2-608, as support for their claim. The Plaintiffs make scant reference to this Act, stating only that "Oklahoma laws such as 63 O.S. § 2-209(B) et seq. and 21 O.S. § 1725, the Uniform Controlled Dangerous Substances Act, for example, also represent clear Oklahoma public policy involved here." (Aplt. Br. at 6.) The first section they mention, 63 O.S. § 2-209(B), does not exist.[8] The second section they mention, 21 O.S. § 1725, was repealed in 1971 and replaced by Okla. Stat. Ann. tit. 63, § 2-403. Section 2-403 criminalizes the theft of controlled dangerous substances. Presumably, Plaintiffs point to this section to show that they were reporting that their co-employee was engaged in illegal conduct.

These laws are simply not sufficient to establish the "clear mandate of public policy" necessary to state a Burk tort claim. Burk, 770 P.2d at 28. Plaintiffs point to no provision of the Uniform Controlled Dangerous Substances Act that purports to establish a policy that governs their situation or encourages

---

[8]Before the district court, Plaintiffs cited Okla. Stat. Ann. tit. 63, § 2-309(B). Assuming that they intended to cite this statute in their brief on appeal, it does not change our analysis. Section 2-309(B) merely provides definitions of terms used in the Anti-Drug Diversion Act. It is unclear how this provision applies to this case. If Plaintiffs intended to cite § 2-309(B), they likewise fail to explain its applicability to the instant case.

the type of reporting that occurred in this case. We agree with the district court that this authority is "far too slender a reed upon which to base a public policy tort." McKenzie v. Renberg's, Inc., 94 F.2d 1478, 1488 (10th Cir. 1996); see Hayes, 905 P.2d at 781 (holding that the Oklahoma law criminalizing embezzlement did not state a sufficiently strong public policy to prevent an employee from being terminated after he reported to his employer that his manager was embezzling).

Because we find that none of the legal authority that Plaintiffs have properly presented to this Court articulates a clear mandate of public policy that would prevent their termination, we AFFIRM the district court's grant of summary judgment to Defendant. Appellee's motion to dismiss is denied.