**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 21, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CARMEN T. CISNEROS,

Plaintiff-Appellant,

v.

No. 06-8029

MICHAEL J. ARAGON,

Defendant-Appellee.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 05-CV-146-B)**

---

Submitted on the briefs:[*]

Guy P. Cleveland, Cleveland Law Office, Cheyenne, Wyoming, for Plaintiff-Appellant.

Mary Elizabeth Galvan, Laramie, Wyoming, for Defendant-Appellee.

---

Before **KELLY**, **LUCERO**, and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This appeal arises under two rarely invoked statutes. The Alien Tort Statute (ATS), 28 U.S.C. § 1350, grants federal district courts jurisdiction to hear civil suits by aliens alleging torts committed in violation of the law of nations. Section 2255(a) of Title 18 creates a civil cause of action for victims of certain sexual offenses under federal law. Plaintiff Carmen T. Cisneros, a native and citizen of Mexico, relied on both statutes in suing Defendant Michael J. Aragon for alleged sexual offenses committed in this country while she was under 16. The district court granted Mr. Aragon summary judgment on the ground that it lacked subject-matter jurisdiction over either claim. It held that (1) it did not have subject-matter jurisdiction over the ATS claims because "the particular sex offenses asserted by . . . [Ms. Cisneros] . . . do not qualify as torts in violation of the law of nations," Aplt. App. at 133; and (2) it did not have subject-matter jurisdiction over the § 2255(a) claims because Ms. Cisneros had "failed to offer sufficient evidence to [prove that] the alleged sex acts . . . occur[red] within the special maritime or territorial jurisdiction of the United States," *id.* at 134 (internal quotation marks omitted). We affirm the dismissal of the § 1350 claims for lack of jurisdiction. We also affirm the dismissal of the § 2255(a) claims but for failure to establish an element of the cause of action rather than for lack of jurisdiction.

## I.     BACKGROUND

Ms. Cisneros alleges that she was born in Mexico on October 22, 1971, was brought to Wyoming by her parents in 1979, and married Mr. Aragon in Wyoming on April 29, 1987, while she was 15.  Their marriage was dissolved 13 years later. According to her amended complaint, Mr. Aragon's sexual offenses—statutory rape and sexual assault by having sexual relations with one incapable of appraising the nature of the conduct or physically incapable of refusing to participate in the conduct—occurred in Wyoming during the year before she turned 16.  Two of the offenses allegedly occurred in the Medicine Bow National Forest on federal land.

## II.     ANALYSIS

We have jurisdiction under 28 U.S.C. § 1291.  We review the district court's summary judgment de novo, "apply[ing] the same legal standard to be used by the district court" under Fed. R. Civ. P. 56(c).  *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1192 (10th Cir. 2006).  Under Rule 56(c) summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

## A.     Claims Under the Alien Tort Statute

The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. Ms. Cisneros is not alleging that Mr. Aragon's conduct violated a treaty of the United States. Our inquiry thus focuses exclusively on whether Ms. Cisneros has sufficiently alleged a violation of the *law of nations*, as that term is used in § 1350. For guidance we turn to the Supreme Court's recent decision in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004).

The plaintiff in *Sosa* was a Mexican national who had been unlawfully abducted in Mexico, held overnight, and then transported to the United States where he was arrested by federal officers on charges of the murder and torture of an agent of the federal Drug Enforcement Administration. *See id.* at 697–98. Defendant Sosa was a Mexican national who had participated in the abduction. After being acquitted on the charges against him, the plaintiff brought an action against Sosa in a United States district court under the ATS. *See id.* at 698–99. The issue before the Supreme Court was whether the law of nations included "a general prohibition of 'arbitrary' detention defined as officially sanctioned action exceeding positive authorization to detain under the domestic law of some government, regardless of the circumstances." *Id.* at 736. The Court concluded that it did not, holding that the plaintiff had no claim under the ATS. *See id.* at

738. Although the Court did not articulate "the ultimate criteria for accepting a cause of action subject to jurisdiction under § 1350," *id.* at 732, it did delineate the principal considerations.

The Court first concluded that the ATS, which was originally enacted as part of the Judiciary Act of 1789, is "only jurisdictional," *id.* at 712, and does not create a statutory cause of action, *see id.* at 713. But it rejected the notion that "the ATS was stillborn because there could be no claim for relief without a further statute expressly authorizing adoption of causes of action." *Id.* at 714. Instead, according to the Court, the statute expressed Congress's intent "that federal courts could entertain claims once the jurisdictional grant was on the books, because torts in violation of the law of nations would have been recognized within the common law of the time." *Id.* One component of this law was "a body of judge-made law regulating the conduct of individuals situated outside domestic boundaries and consequently carrying an international savor." *Id.* at 715. Within this law was

> a sphere in which these rules binding individuals for the benefit of other individuals overlapped with the norms of state relationships. Blackstone referred to it when he mentioned three specific offenses against the law of nations addressed by the criminal law of England: violation of safe conducts, infringement of the rights of ambassadors, and piracy. An assault against an ambassador, for example, impinged upon the sovereignty of the foreign nation and if not adequately redressed could rise to an issue of war. *It was this narrow set of violations of the law of nations, admitting of a judicial remedy and at the same time threatening serious consequences in*

*international affairs, that was probably on minds of the men who drafted the ATS with its reference to tort.*

*Id.* (emphasis added) (citation omitted).  The Court concluded:

> [A]lthough the ATS is a jurisdictional statute creating no new causes of action, the reasonable inference from the historical materials is that the statute was intended to have practical effect the moment it became law.  The jurisdictional grant is best read as having been enacted on the understanding that the common law would provide a cause of action for the modest number of international law violations with a potential for personal liability at the time.

*Id.* at 724.

The Court next addressed whether § 1350 empowered the federal courts to recognize under the law of nations new claims, in addition to the well-established traditional causes of action for "violation of safe conducts, infringement of the rights of ambassadors, and piracy." *Id.*  Although the Court accepted the possibility of new causes of action, it cautioned that "there are good reasons for a restrained conception of the discretion a federal court should exercise in considering a new cause of action of this kind." *Id.* at 725.  It continued:  "[W]e think courts should require any claim based on the present-day law of nations to rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms we have recognized." *Id.*  Applying this standard, the Court held that "a single illegal detention of less than a day, followed by the transfer of custody to lawful authorities and a prompt arraignment, violates no norm of customary

international law so well defined as to support the creation of a federal remedy [under § 1350]." *Id.* at 738.

Ms. Cisneros asserts two types of sexual abuse. First, she alleges that Mr. Aragon violated the federal statutory-rape statute, 18 U.S.C. § 2243(a), because he had sexual relations with her when she was only 15 years old and he was 19. Second, she alleges that he violated 18 U.S.C. § 2242(2)(A) and (B) because he had sexual relations with her at a time when she was (1) incapable of appraising the nature of the conduct and (2) physically incapable of refusing to participate in the conduct. According to Ms. Cisneros, these statutory provisions are "a 'law of nation' [sic] providing this Court with enough to find jurisdiction under the ATS." Aplt. Br. at 9. In the alternative, she contends that "there is plenty of common everyday evidence subject to judicial notice to show the 'law of nations' requirement is met." *Id.* at 8.

We reject both contentions. To begin with, criminalization of conduct by the United States does not mean that the conduct violates the law of nations. Such criminalization may be relevant evidence, but the controlling consideration is whether the claimed wrongdoing "rest[s] on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms [that the Supreme Court has] recognized." *Sosa*, 542 U.S. at 725. A United States statute may or may not express "a norm

of international character." Consequently, jurisdiction under § 1350 cannot be based solely on a violation of our criminal code.

For her second contention Ms. Cisneros relies on an Interpol website titled "Legislation of Interpol member states on sexual offences against children," *see* http://www.interpol.int/Public/Children/SexualAbuse/NationalLaws, and on Articles 16 and 34 of the United Nations Convention on the Rights of the Child, *see* http://www.unhchr.ch/html/menu2/6/crc/treaties/crc.htm. But neither source states norms of international law that satisfy the "requirement of clear definition" set forth in *Sosa*. *See Sosa*, 542 U.S. at 733 n.21. The Interpol website simply summarizes pertinent statutes provided by member states. It does not purport to express any consensus among nations. And Ms. Cisneros makes no effort to extract or identify from the site any data that would support her view. We have not attempted to do that work for her but there is reason to doubt her conclusion. For example, as Mr. Aragon points out, it is hardly clear that his alleged acts would even be criminal in her native Mexico.[1]

Articles 16 and 34 of the United Nations Convention on the Rights of the Child likewise provide Ms. Cisneros with no support. Article 16 states:

---

[1]  *See* Aplee. Supp. App. at 88–89 (setting forth English-language translation of Article 262 of the Mexican Penal Code, which provides that "[w]hoever has copulation with a person older than twelve years and younger than eighteen, obtaining his consent through means of deceit, shall be subject to a sentence of three months to four years in prison"). Ms. Cisneros has not alleged the deceit required by Mexican law.

1. No child shall be subjected to arbitrary or unlawful interference with his or her privacy, family, home or correspondence, nor to unlawful attacks on his or her honour and reputation.

2. The child has the right to the protection of the law against such interference or attacks.

And Article 34 provides:

States Parties undertake to protect the child from all forms of sexual exploitation and sexual abuse. For these purposes, States Parties shall in particular take all appropriate national, bilateral and multilateral measures to prevent:

(a) The inducement or coercion of a child to engage in any unlawful sexual activity;

(b) The exploitive use of children in prostitution or other unlawful sexual practices;

(c) The exploitive use of children in pornographic performances and materials.

This language hardly describes sexual misconduct "with a specificity comparable to the features of the 18th-century paradigms [that the Supreme Court has] recognized." *Sosa*, 542 U.S. at 725. The two articles are simply aspirational goals stated in imprecise language.[2]

Moreover, the law of nations, particularly the subset of that law enforceable under the ATS, does not include a norm simply because the norm is enshrined in

---

[2] We note that this is typical of many of the articles in the United Nations Convention. For example, section one of Article 12 provides that "States Parties shall assure to the child who is capable of forming his or her own views the right to express those views freely in all matters affecting the child, the views of the child being given due weight in accordance with the age and maturity of the child."

the domestic law of all civilized societies. Auto theft is not a violation of international law. As the Supreme Court said in *Sosa*, the drafters of the ATS probably had in mind only rules of international law regulating the conduct of individuals that "overlapped with the norms of state relationships," 542 U.S. at 715, that is, a "narrow set of violations of the law of nations [] admitting of a judicial remedy and at the same time threatening serious consequences in international affairs, " *id.* The Court's requirement that the law-of-nations norm be defined with precision is not a substitute for the requirement that the violation be of a type that can substantially impact international affairs, but is an additional requirement. A pre-*Sosa* circuit-court opinion reflected this limitation when it recognized ATS causes of action for war crimes and genocide but not "torture and summary execution—when not perpetrated in the course of genocide or war crimes." *Kadic v. Karadzic*, 70 F.3d 232, 243 (2d Cir. 1995). There can be no doubt that the alleged misconduct of Mr. Aragon was not of the sort that comes close to "threatening serious consequences in international affairs." *Sosa* at 715. We therefore affirm the district court's rejection of Ms. Cisneros's ATS claims.

**B.     Claims Under 18 U.S.C. § 2255(a)**

Section 2255(a) states:

> Any minor who is a victim of a violation of section 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, may sue in any appropriate United States District Court and shall recover the actual damages such minor sustains and the cost of the

suit, including a reasonable attorney's fee. Any minor as described in the preceding sentence shall be deemed to have sustained damages of no less than $50,000 in value.[3]

We will assume that a criminal conviction is not necessary for a defendant to face civil liability under the statute. *See Smith v. Husband*, 376 F. Supp. 2d 603, 613 (E.D. Va. 2005).

The predicate offenses alleged by Ms. Cisneros are violations of 18 U.S.C. §§ 2242(2)[4] and 2243(a).[5] The dispositive feature of both statutes is that they

---

[3] We quote the version of the statute in effect from 1998 through 2005. An amendment enacted in 2006 would not affect our analysis. We note, however, that the version in effect from enactment in October 1986 until the 1998 amendment referred only to violations of §§ 2251 and 2252, so Ms. Cisneros could have a claim based on a violation of § 2255 only if the 1998 amendment applied retroactively to conduct preceding the amendment. We also note that on appeal Mr. Aragon has not raised a statute-of-limitations argument under § 2255(b).

[4] The current version of 18 U.S.C. § 2242(2) is:

Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General, knowingly—

. . .

(2) engages in a sexual act with another person if that other person is—
(A) incapable of appraising the nature of the conduct; or
(B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;

or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.

The amendments since enactment are irrelevant to our analysis.

[5] The current version of § 2243(a) is:

(continued...)

require prohibited acts to be committed within the "special maritime and territorial jurisdiction of the United States." That jurisdiction is defined by 18 U.S.C. § 7(3) to include "[a]ny lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof . . . ."

Ms. Cisneros has claimed that two of Mr. Aragon's acts came within the statutes because they occurred on federally owned land within the Medicine Bow National Forest. We agree with the district court, however, that she failed to offer sufficient evidence to support this claim. Most importantly, as pointed out by the district court, although Ms. Cisneros "include[d] latitude and longitude information in her [summary judgment response]," Aplt. App. at 127, she failed to provide any "documentary evidence showing that these locations were in fact on federally owned land and not on privately owned land within the Medicine Bow

---

[5](...continued)
Sexual abuse . . .

      (a)    Of a minor.—Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General, knowingly engages in a sexual act with another person who—

            (1) has attained the age of 12 years but has not attained the age of 16 years; and
            (2) is a least four years younger than the person so engaging;

or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

The amendments since enactment are irrelevant to our analysis.

National Forest," *id.* at 138.  On appeal her sole contention is that her evidence was adequate to show that the alleged acts occurred on federal land.  In her summary-judgment response, she asserted that "[m]aps made/created by Plaintiff when retracing her 'steps'" were attached to her response, *id.* at 89; but there are no maps attached to the copy of the response in the record on appeal.  Accordingly, we affirm the district court's ruling that Ms. Cisneros failed to establish an essential element of her § 2255 claims.  Although failure to prove this element is not a jurisdictional flaw because the complaint alleges the elements of the federal claims, *see Bell v. Hood*, 327 U.S. 678, 681-82 (1946), this failure nevertheless justified dismissal of the claims.

## C.     State-Law Claims and Supplemental Jurisdiction

Ms. Cisneros's amended complaint also pleaded claims under state law for intentional infliction of emotional distress and assault and battery.  She alleged that the district court could exercise supplemental jurisdiction over these claims under 28 U.S.C. § 1367.  But because the district court correctly dismissed the federal claims, it could properly dismiss the state-law claims as well.  *See id.* § 1367(c)(3).

## D.     Motion for New Trial and for Reconsideration

Ms. Cisneros's notice of appeal stated that she is also appealing the district-court order denying her joint motion for a new trial and for reconsideration.  In her opening brief, however, she failed to offer any substantive

arguments explaining why the district court erred in denying the motion. Consequently, we consider the issue waived. *See Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1281 (10th Cir. 2003) ("We . . . will not consider issues that are raised on appeal but not adequately addressed."); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived.").

## III.   CONCLUSION

We AFFIRM the district court's order dismissing Ms. Cisneros's ATS claims for lack of jurisdiction.  We also AFFIRM the district court's grant of summary judgment on the § 2255 claims for failure to produce evidence of an essential element of the claims.  Finally, we AFFIRM the dismissal of Ms. Cisneros's state-law claims and the denial of her joint motion for new trial and for reconsideration.