**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

G&C HOLDINGS, LLC,

      Plaintiff-Appellant,

v.

REXAM BEVERAGE CAN COMPANY,

      Defendant-Appellee.

No. 12-6239
(D.C. No. 5:10-CV-01079-D)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **McKAY** and **O'BRIEN**, Circuit Judges.

In this diversity case brought under Oklahoma law, plaintiff G&C Holdings, LLC (G&C) appeals from the district court's post-judgment orders denying its motion for attorney's fees and its motion to review costs award. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

In February 2010, G&C and defendant Rexam Beverage Can Company (Rexam) entered into a real estate purchase agreement (the Agreement) pursuant to which G&C was to purchase a parcel of real property from Rexam. As required by the Agreement, G&C paid $100,000 in earnest money to a title company to be held in escrow and later disbursed in accordance with the terms of the Agreement. Old Republic Title Company of Oklahoma (Old Republic) was the title company that acted as the escrow agent.

There are four provisions in the Agreement that are relevant to the issues in this appeal. First, Section 6 of the Agreement provided for a "Due Diligence Period" during which time G&C could conduct any due diligence related to the property that it deemed necessary. Second, Section 6.1 provided that G&C could "terminate [the] Agreement during the Due Diligence Period for any reason by providing [Rexam] with written notice of termination." Aplt. App. at 73. Third, Section 6.2 provided that Old Republic would promptly return the earnest money to G&C if it "properly terminate[d] the Agreement . . . during the Due Diligence Period." *Id.* Fourth, Section 13.5 is entitled "Effects of Termination," and it provided as follows:

> Upon the termination of this Agreement, [G&C] and [Rexam] shall have no further rights, duties or obligations under this Agreement, except any rights, duties, obligations or responsibilities expressly provided for in this Agreement to survive the termination of this Agreement, and in the event this Agreement is terminated after the expiration of the Due Diligence Period, the Title Company shall promptly disburse the Earnest Money to [Rexam]. Notwithstanding the foregoing, in the event that the termination of this Agreement occurs as a result of a Party's

> misrepresentation, breach or failure to perform, the breaching Party shall be obligated and responsible for any and all costs and expenses (including reasonable attorney's fees) incurred by the non-breaching Party related to or connected with this Agreement.

*Id.* at 79.

In July 2010, G&C's attorney sent a letter to Rexam's attorney requesting that the Agreement be mutually terminated and the earnest money released to G&C. Rexam's attorney rejected G&C's request, however, claiming that the earnest money was nonrefundable as a result of the expiration of the Due Diligence Period.

In September 2010, G&C filed a Petition in an Oklahoma state court, naming both Rexam and Old Republic as defendants. G&C claimed that "[b]y virtue of the July 27, 2010 letter of termination, the Agreement is terminated and the earnest money should be returned to plaintiff." Aplt. App. at 18. In its request for relief, G&C therefore "pray[ed] that the . . . Agreement be deemed terminated, that plaintiff be returned the earnest money of $100,000.00, [and] that defendant, Old Republic, be ordered to return the earnest money to plaintiff." *Id.* Importantly, G&C's Petition did not assert a claim for relief for misrepresentation, breach of contract, or failure to perform. Rexam removed the case to federal court based on diversity of citizenship and filed a counterclaim against G&C for breach of contract.

In January 2011, in response to a joint motion filed by the parties, the district court entered an Order For Interpleader directing Old Republic to "deposit with the Clerk of Court the sum of $100,000.00 less the amount of [Old Republic's] reasonable expenses agreed to by the parties." *Id.* at 162. The order further stated

- 3 -

that, "upon notice to the Court of such payment, Defendant Old Republic . . . shall be dismissed from this action." *Id.*

In February 2011, G&C filed a motion for summary judgment seeking a determination that it was entitled to terminate the Agreement and to recover the earnest money. Consistent with its initial Petition, G&C's motion did not assert a claim for relief for misrepresentation, breach of contract, or failure to perform. In March 2011, Rexam filed a motion for partial summary judgment seeking a determination that G&C had breached the Agreement.

On November 21, 2011, the district court entered an order granting G&C's motion for summary judgment and denying Rexam's motion for partial summary judgment. In its order, the court found that G&C had "properly exercised its unconditional right of termination within the Due Diligence Period." *Id.* at 158. The court therefore determined that G&C was "entitled to summary judgment in its favor and to payment of the escrow money." *Id.* However, there were no findings in the district court's order to the effect that Rexam made a misrepresentation, committed a breach, or failed to perform under the Agreement.

On November 22, 2011, Old Republic deposited the earnest money with the district court. The total amount of the deposit was $94,035. In accordance with the court's Order for Interpleader, Old Republic deducted and retained $5,965 to

reimburse itself for the attorney's fees it had incurred in this action.[1]  On November 28, 2011, the district court entered an order dismissing Old Republic from the case.

On November 30, 2011, G&C filed a Bill of Costs seeking to recover from Rexam its litigation costs as a prevailing party under Fed. R. Civ. P. 54(d)(1) and pursuant to Section 13.5 of the Agreement.  The total amount of costs requested by G&C was $6,218.19, and this amount included, as "other costs," the $5,965 in attorney's fees that Old Republic had deducted from the interpleader fund.  On January 12, 2012, the clerk of the district court taxed costs against Rexam in the amount of $253.10, but the clerk denied G&C's request to tax the amount deducted by Old Republic for its attorney's fees.

On January 17, 2012, G&C filed a motion to review the clerk's costs award, seeking again to recover from Rexam the amount deducted by Old Republic for its attorney's fees.  In addition to relying on federal law and Section 13.5 of the Agreement, G&C also argued in its motion that it was entitled to recover the deducted amount under Okla. Stat. tit. 12, § 2022(D).  On August 13, 2012, the district court entered an order denying G&C's motion to review the costs award.

---

[1]     We note that the record on appeal does not contain any documentation specifically showing that Old Republic incurred $5,965 in attorney's fees in defending itself in this case.  However, Rexam has asserted both in the district court proceedings and in this appeal that the $5,965 was retained by Old Republic as reimbursement for its attorney's fees, and G&C has not disputed this assertion.  We therefore assume, for purposes of this appeal, that the retained amount was reimbursement for the attorney's fees that Old Republic incurred in this case.

Meanwhile, back in December 2011, G&C had also filed a motion to recover the attorney's fees that it incurred in this case. G&C sought to recover $38,570 in attorney's fees from Rexam, arguing that it was entitled to recover its fees under Section 13.5 of the Agreement. In August 2012, the district court entered an order denying G&C's motion for attorney's fees. Specifically, the court concluded that Section 13.5 of the Agreement provided for an award of attorney's fees upon termination of the Agreement only if the termination occurred as a result of a party's misrepresentation, breach, or failure to perform. Because the court did not find in its summary judgment order that Rexam had committed any such act in connection with the Agreement's termination, the court held that G&C was not entitled to recover its attorney's fees under Section 13.5.

## II. DISCUSSION

### A. G&C's Motion for Attorney's Fees

This diversity case is governed by Oklahoma law, and "Oklahoma follows the American rule concerning the recovery of attorney fees. It provides that each litigant pay for legal representation and that courts are without authority to assess attorney fees in the absence of a specific statute or contract." *Whitehorse v. Johnson*, 156 P.3d 41, 47 (Okla. 2007). Because G&C is seeking to recover its attorney's fees under Section 13.5 of the Agreement, the American rule is not a bar to recovery. Instead, G&C's request for fees raises issues of contract interpretation. The controlling legal principles under Oklahoma law are as follows:

If the terms of a contract are unambiguous, clear and consistent, they are accepted in their plain and ordinary sense and the contract will be enforced to carry out the intention of the parties as it existed at the time it was negotiated. The interpretation of a contract, and whether it is ambiguous is a matter of law for the Court to resolve.

*Whitehorse*, 156 P.3d at 47 (footnote omitted).

We review the district court's legal conclusions concerning the provision for attorney's fees in Section 13.5 of the Agreement de novo. *See Tulsa Litho Co. v. Tile & Decorative Surfaces Magazine Pub., Inc.*, 69 F.3d 1041, 1043 (10th Cir. 1995). Having conducted the required de novo review, we agree with the district court's analysis. We therefore adopt the following reasoning of the district court:

> [I]n this case, the Court finds the contractual provision on which Plaintiff relies to be clear and unambiguous. The Agreement expressly provided that upon a termination according to its terms – without a breach of contractual obligations by either party – the parties would simply walk away, with no further rights or obligations other than those specifically provided for in the Agreement. The express provision for attorney fees obligated one party to bear the other party's costs and expenses only "[i]n the event that the termination of this Agreement occurs as a result of a Party's misrepresentation, breach or failure to perform." *See* Agreement, § 13.5. Despite Plaintiff's attempt to recharacterize its action at this late stage, Plaintiff did not assert prior to judgment that Defendant breached the Agreement or failed to perform it. Instead, Plaintiff sought and obtained an interpretation of the Agreement and a judicial declaration of rights under it. The parties simply had a legitimate dispute about whether Plaintiff had timely exercised its termination right. Upon the Court's determination in Plaintiff's favor, the Agreement was terminated according to its terms, and each party must simply walk away.

Aplt. App. at 210-11.

We also reject the arguments advanced by G&C on appeal. First, G&C argues that "Defendant would not allow Plaintiff to terminate the Agreement and reclaim its

earnest money.  Plaintiff submits that this was a breach of the Agreement by Defendant as it prevented Plaintiff [from] performing [its] rights on the contract." Aplt. Opening Br. at 9.  We disagree.  Section 13.5 of the Agreement unambiguously provided that "*in the event that the termination of this Agreement occurs as a result of a Party's . . . breach . . .* , the breaching Party shall be obligated and responsible for any . . . reasonable attorney's fees . . . incurred by the non-breaching Party." Aplt. App. at 79 (emphasis added).  Given this explicit language, the attorney's fees provision in Section 13.5 is limited to a breach that *results in* the termination of the Agreement, and no such breach occurred here.

Second, G&C argues that it "had to defend against a [counterclaim] of breach and the parties litigated a cause for breach.  Therefore, the Court erred in when it failed to consider these facts in determining whether attorney's fees should be awarded under the Agreement for breach of contract."  Aplt. Opening Br. at 11.  This argument is a nonsequitur.  As Rexam points out, "the District Court's denial of Rexam's Motion for Partial Summary Judgment was a determination that G&C had not committed a breach, not that Rexam had."  Aplee. Br. at 15.

Third, G&C argues for the first time on appeal that it was entitled to an award of attorney's fees under Section 22 of the Agreement.  However, "[a]bsent extraordinary circumstances, we will not consider arguments raised for the first time on appeal."  *Koch v. City of Del City*, 660 F.3d 1228, 1237 n.4 (10th Cir. 2011)

- 8 -

(internal quotation marks omitted). We see no such circumstances here, and we therefore decline to consider Section 22 of the Agreement.

Finally, G&C argues that Rexam should be judicially estopped from opposing its request for attorney's fees because Rexam pled in its counterclaim that "[u]nder the terms of the Agreement, the prevailing party in this action is entitled to recover attorneys' fees and costs." Aplt. App. at 32. This argument is without merit. To be entitled to judicial estoppel, G&C had to prove that the district court relied upon Rexam's representation to either grant relief to Rexam or to deny relief to G&C. *See Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005). Neither of these scenarios occurred in the district court proceedings.

**B. G&C's Motion to Review Costs Award**

In its opening brief, G&C argues that it was entitled to recover from Rexam the amount deducted by Old Republic for its attorney's fees under Sections 13.5 and 22 of the Agreement and under Okla. Stat. tit. 12, § 2022(D). However, G&C's arguments under Sections 13.5 and 22 of the Agreement fail for the reasons articulated above. The Oklahoma statute is also of no assistance to G&C. It provides that, "[i]n cases of interpleader, costs may be adjudged for or against any party." Okla. Stat. tit. 12, § 2022(D). G&C has not made any attempt to explain how this general provision allows a winning claimant in an interpleader action to recoup the attorney's fees awarded to the stakeholder from a losing claimant. Instead, G&C has only argued, in conclusory fashion, that "Oklahoma law . . . provides for the recovery

of interpleader costs for or against any party." Aplt. Opening Br. at 8-9 (citing § 2022(D)); *see also id.* at 13 (same). This is an inadequate appellate argument, and we therefore refuse to consider it. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . ."); *Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1281 (10th Cir. 2003) ("We . . . will not consider issues that are raised on appeal but not adequately addressed.").

The judgment of the district court is affirmed.

Entered for the Court

Mary Beck Briscoe
Chief Judge